UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JASPREET SINGH, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00202-JRO-MJD |
| | ) | |
| WARDEN, CLAY COUNTY JUSTICE | ) | |
| CENTER, BRAZIL IN; | ) | |
| U.S. IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT (ICE); U.S. | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY (DHS); MARKWAYNE MULLIN; | ) | |
| TODD LYONS; and TODD BLANCHE;[1] | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS AND
MOTION FOR TEMPORARY RESTRAINING ORDER**

The Immigration and Nationality Act ("INA") not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability. The main issue in this case is whether the Petitioner, Jaspreet Singh, falls into the category of aliens subject to mandatory detention. He does under 8 U.S.C. § 1225(b)(2)(A), and his detention does not violate the Fifth Amendment's Due Process Clause. The Court therefore **DENIES**

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Markwayne Mullin (as Secretary of the U.S. Department of Homeland Security) is automatically substituted for Respondents Alejandro Mayorkas and Kristi Noem; Todd Blanche (as Acting Attorney General of the United States) is automatically substituted for Respondent Pamela Jo Bondi; and Todd Lyons (as Acting Director of Immigration and Customs Enforcement) is automatically substituted for Respondent Tae Johnson.

his Petition for Writ of Habeas Corpus, dkt. [1], and **DENIES** the motion for temporary restraining order, dkt. [10].

## I.  BACKGROUND

### A.    Factual Background

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence.  *See* 28 U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of India.  Dkt. 1 at 2, 6; Dkt. 6 at 3; Dkt. 6-1 at 1; Dkt. 6-2 at 1.  In July 2018, he entered the United States as an unaccompanied minor and was apprehended by U.S. Border Patrol.  Dkt. 1 at 2, 6; Dkt. 6 at 3; Dkt. 6-1 at 1; Dkt. 6-2 at 1–2.  The U.S. Department of Homeland Security ("DHS") issued a Notice to Appear at that time, directing removal proceedings. Dkt. 1 at 2, 6, 20.  The 2018 NTA charges Petitioner as removable based on 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").  Dkt. 1 at 20.  He was released on his own recognizance in September 2018.  Dkt. 6 at 3; Dkt. 6-2 at 2.  In July 2019, Petitioner filed an I-589, Application for Asylum with the U.S. Customs and Immigration Services (USCIS).  Dkt. 1 at 2, 6, 24;

2

Dkt. 6-2 at 2.  But he now "freely claim[s] that he does not fear torture and/or persecution if removed from the United States."  Dkt. 6-2 at 3.

On March 10, 2026, Indiana State Police initiated a traffic stop of Petitioner.  Dkt. 1 at 2, 6; Dkt. 6 at 3; Dkt. 6-2 at 2.  During the traffic stop, police contacted ICE, who confirmed that Petitioner was unlawfully present in the United States.  Dkt. 1 at 2, 6; Dkt. 6 at 3; Dkt. 6-2 at 2.  Petitioner was arrested and taken into ICE custody pursuant to an I-200 warrant.  Dkt. 1 at 2, 6; Dkt. 6 at 3; Dkt. 6-1 at 5; Dkt. 6-2 at 2.  A second NTA was issued charging Petitioner as removable based on 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry documentation).  Dkt. 1 at 29.  On March 11, 2026, ICE revoked Petitioner's prior order of release on recognizance.  Dkt. 6 at 3; Dkt. 6-3 at 1.  He is detained in the Clay County Justice Center in Brazil, Indiana.  Dkt. 1 at 2, 32.

Petitioner filed the instant habeas petition.  Dkt. 1.  He names as Respondents Warden of the Clay County Justice Center, Brazil, IN; U.S. Immigration and Customs Enforcement; U.S. Department of Homeland Security; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; Todd Lyons, Acting Director of ICE; and Todd Blanche, Acting Attorney General of the United States.  Dkt. 1 at 1, 3–4.

## B.    Statutory Background

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and

3

8 U.S.C. § 1226.  While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

Key to Section 1225 is its definition of "applicant for admission."  Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted." 8 U.S.C. § 1225(a)(1).  The Supreme Court has explained that "applicants for admission fall into one of two categories"—"those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) generally requires the detention and expedited removal of "arriving" aliens and certain other aliens determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation.   8 U.S.C. § 1225(b)(1).  Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Jennings*, 583 U.S. at 287.  With exceptions not relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).   In other words, detention is mandatory pending removal proceedings.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8

4

U.S.C. § 1226(a) (emphasis added). Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien "falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II.  DISCUSSION

Petitioner seeks release from detention while he awaits his removal proceedings because he contends his detention is unlawful under Section 1226(a) and the Fifth Amendment's Due Process Clause. Respondents rely upon Section 1225(b)(2)(A) to detain Petitioner without a bond hearing pending his removal proceedings because they argue he is an "applicant for admission." Petitioner argues that Section 1226(a) and its associated regulations govern his detention and, along with the Due Process Clause, entitle him to release or a bond hearing. Ultimately, he is not entitled to the relief he seeks.[2]

### A.  *Castañon-Nava* does not control this case.

As a preliminary matter, Respondents alerted the Court to the Seventh Circuit's recent opinion in *Castañon-Nava v. U.S. Department of Homeland Security*, No. 25-3050, --- F.4th ---, 2026 WL 1223250 (7th Cir. May 5, 2026), *see* dkt. 9, which includes a fulsome discussion of the Section 1225(b)(2)(A) issue presented in the petition. The *Castañon-Nava* opinion confirms that the Seventh

---

[2] Petitioner also argues that his claim is not subject to any exhaustion requirement. Dkt. 1 at 5–6. But Respondents did not raise an exhaustion defense in their Returns to the Court's Order to Show Cause. *See* Dkts. 6 & 8. So the Court does not address this issue.

Circuit has yet to issue binding precedent resolving the scope of Respondents' mandatory detention authority under Section 1225(b)(2)(A).

In *Castañon-Nava*, the Seventh Circuit addressed allegations that DHS and ICE violated a 2022 Consent Decree addressing the warrantless arrests of aliens pursuant to 8 U.S.C. § 1357(a)(2). The Consent Decree resolved a class-action lawsuit alleging violations of 8 U.S.C. § 1357, brought by a certified class of "[a]ll current and future persons arrested without a warrant for a civil violation of U.S. immigration laws within the area of responsibility of the ICE Chicago Field Office," against DHS, ICE, and various federal officials. *Castañon-Nava*, 2026 WL 1223250, at *2. In the Consent Decree, the defendants agreed "to comply with § 1357(a)(2) when making warrantless arrests and issue a 'Broadcast Statement of Policy' affirming 'the underlying laws and policies applicable to all arrests effected under 8 U.S.C. § 1357(a)(2).'" *Id.* at *1. The Consent Decree also had an expiration date of May 12, 2025. *Id.* at *2. One day after the expiration date, the *Castañon-Nava* class alleged that the defendants violated the Consent Decree. *Id.* In relevant part, the district court issued two orders to address the breach. First, it ordered the Consent Decree extended by 118 days. Second, it ordered the defendants to release "13 class members, as well as approximately 200 additional individuals, whose arrests (in the district court's words) 'potentially' violated § 1357(a)(2)." *Id.* at *1.

The defendants moved to stay both orders pending appeal. That motion was granted in part and denied in part in a 2–1 decision. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025). After full briefing and

oral argument, a majority of the Seventh Circuit ultimately affirmed in part and denied in part the district court's two orders, with Judge Lee writing the majority opinion and Judge Pryor concurring in part and concurring in the judgment. Between these two opinions, the Seventh Circuit affirmed the district court's first order "extend[ing] the Consent Decree by 118 days" and part of the second order "releas[ing] . . . class members for whom a determination has been made that they were arrested without a warrant in contravention of 8 U.S.C. § 1357(a) and the Consent Decree," but reversed the remainder of the district court's second order "to the extent it requires the release of 'potential class members' and any person who was arrested pursuant to an I-200 warrant (defective or otherwise)." *Castañon-Nava*, 2026 WL 1223250, at *22.  Judge Kirsch dissented, concluding that the Court "should vacate both orders and remand the case to the district court." *Id.* at *39 (Kirsch, J., dissenting).

So far, this has little to do with the case at hand.  Here is how a discussion of Section 1225(b)(2)(A) arose in that case.  In opposing the district court's second order—that is, the one ordering release of 13 class members, and approximately 200 "potential" class members—the defendants argued, in relevant part, that the district court "restrict[ed] the government's ability to detain noncitizens pursuant to its authority under § 1225(b)(2)(A)[.]" *Id.* at *8.  On that argument, however, *Castañon-Nava* is a fractured 1–1–1 opinion.

Judge Lee confronted the defendants' Section 1225(b)(2)(A) argument and disagreed with it, while acknowledging that "his colleagues . . . believe that we should not reach this issue."  *Castañon-Nava*, 2026 WL 1223250, at *9–21 (Lee,

J.).  Judge Pryor concluded that it was not necessary for the Court to "reach[] the merits of the Plaintiffs' argument that the Defendants' interpretation of 8 U.S.C. § 1225(b)(2)(A) is improper," declining to join that portion of Judge Lee's opinion and voting to resolve the case on other grounds.  *Id.* at \*22 (Pryor, J., concurring in part and concurring in judgment); *see id.* at \*25–26.  And Judge Kirsch concluded in his dissent that the defendants' reading of Section 1225(b)(2)(A) is correct.  *Id.* at \*34–38 (Kirsch, J., dissenting).  The portion of the merits opinion in *Castañon-Nava* addressing the meaning and applicability of Section 1225(b)(2)(A) is, therefore, not a precedential holding of the Seventh Circuit,[3] and both Judge Lee's and Judge Kirsch's opinions are persuasive authority on this issue.  While the reasoning in these opinions does not arise from the procedural posture of this case (i.e., a habeas petition directly challenging the Respondents' application of Section 1225(b)(2)(A) to the petitioner), both warrant serious consideration.  The same is true of the many orders from this District that have deferred to Judge Lee's reasoning in the *Castañon-Nava* stay opinion,[4] which mirrors his reasoning in his merits opinion

---

[3] The Seventh Circuit's discussion of Section 1225(b)(2)(A) in its emergency stay order in *Castañon-Nava*, 161 F.4th 1048, is also not binding precedent.  As the merits opinion all but confirms, the stay order's discussion of Section 1225(b)(2)(A) is dicta because it was not essential to the resolution of the stay order or the merits.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66–67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").  Further, decisions from motions panels at the stay stage, even those directly on point, are "not entitled to the weight of a decision made after plenary submission" because they are "summary in character" and "made often on a scanty record." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).

[4] *See, e.g., Alejandro v. Olson*, --- F. Supp. 3d ---, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at \*7 (S.D. Ind. Oct. 11, 2025) ("The phrase 'seeking admission,' . . . means that a noncitizen must be actively 'seeking' 'lawful entry.'" (internal citation omitted));

and two other recent opinions from the Second and Eleventh Circuits. *See Cunha v. Freden*, No. 25-3141-pr, --- F.4th ---, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *Alvarez v. Warden*, No. 25-14065, --- F.4th ---, 2026 WL 1243395 (11th Cir. May 6, 2026).

Respectfully, and for the reasons explained below and in this Court's prior orders in similar cases, *e.g.*, *Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026), this Court reads Section 1225(b)(2)(A) in line with Judge Kirsch's merits opinion in *Castañon-Nava*, which is consistent with the reasoning of the Fifth and Eighth Circuits addressing the precise issue on the merits in habeas actions. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).[5]

**B. Petitioner is not entitled to a bond hearing because Section 1225(b)(2)(A) mandates his detention pending removal proceedings.**

Section 1225's plain terms require Petitioner's detention pending his removal proceedings. When engaging in statutory interpretation, the Court

---

*Campos Leon v. Forestal*, No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sep. 22, 2025) ("Meanwhile, the respondents' contention that Mr. Campos Leon's detention is mandatory under § 1225(b)(2) is, at best, incomplete. Assuming for the sake of argument that Mr. Campos Leon is an 'applicant for admission,' the respondents has not explained how he is 'seeking admission' such that § 1225(b)(2) applies."). Opinions of other judges in this District do not bind this Court. *Trump v. CASA, Inc.*, 606 U.S. 831, 858 n.17 (2025) (citation omitted) ("[D]istrict court opinions lack precedential force even vis-à-vis other judges in the same judicial district.").

[5] *See also Rayo v. Olson*, No. 2:25-cv-2064-BHL, 2026 WL 594079 (E.D. Wis. Mar. 3, 2026); *Hernandez v. Olson*, No. 2:25-cv-1670-BHL, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026); *Rodriguez v. Olson*, 814 F. Supp. 3d 945 (N.D. Ill. 2026) (Pacold, J.); *Ugarte-Arenas v. Olson*, No. 2:25-cv-1721-WCG, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025), *appeal docketed*, No. 26-1023 (7th Cir. Jan. 7, 2026); *Rojas v. Olson*, No. 2:25-cv-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), *appeal docketed*, No. 25-3127 (7th Cir. Nov. 25, 2025).

"start[s] with the text of the statute to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation and citation omitted). In determining a statute's plain meaning, the Court is guided by the statutory language at issue and the language and design of the statute as a whole. *Id.* at 852. Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ." *Id.*

To start, Petitioner is an "applicant for admission." The term is expressly defined in the statute as follows: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed the border, that definition is broader. "[A]pplicant for admission" includes any unadmitted alien present in the United States no matter when they entered or how long they have been here. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) ("Presence without admission deems the petitioners to be applicants for admission."). There is no dispute that Petitioner is an alien who is present in the United States and has not been admitted. He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2). *Jennings*, 583 U.S. at 287. No party argues that the former applies in this case.

10

And Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country. Thus, as this Court previously held, Section 1225(b)(2)(A) mandates his detention pending removal proceedings. *Demir*, 2026 WL 706485, at *4; *Singh v. Swearingen*, No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026).

Petitioner raises several arguments rejecting this straightforward application of Section 1225. The Court does not find these arguments persuasive.

### 1.    "For a proceeding"

Petitioner argues he is not subject to mandatory detention because Section 1225(b)(2)(A) applies only "to the period between a noncitizen's arrest as an arriving alien and the commencement of his removal proceedings before an immigration judge." Dkt. 1 at 13. Petitioner looks to Section 1225(b)(2)(A)'s phrase, "detained *for a proceeding* under section 1229a," and says this clause restricts mandatory detention only for the "inspection and referral process" for arriving aliens. *Id.* at 13–14. Once there is a referral to removal proceedings, he says, Section 1226(a)'s provisions apply, thereby triggering the right to a bond hearing. *Id.* at 15.

Petitioner seems to misread the phrase "detained for a [removal] proceeding" to mean detention "until" a removal proceeding or "in preparation

for" a removal proceeding.  Dkt. 1 at 13 (citing *Webster's Third New International Dictionary* 886 (1993)).  But as the Supreme Court recognized in *Jennings*, this interpretation of Section 1225(b)(2)(A) "is inconsistent with ordinary English usage and is incompatible with the rest of the statute."  *Jennings*, 583 U.S. at 301 (citing dictionaries).  Section 1225(b) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin."  *Id.* at 302.

Petitioner also cites to section headings throughout Section 1225 to support his argument, noting the references to "inspection" and "referral," dkt. 1 at 14, and arguing that these headers show that Section 1225 applies only to "detention pending inspection and referral to subsequent removal proceedings," not detention pending the removal proceedings themselves.  Dkt. 1 at 14.  But again, *Jennings* says otherwise.  *Jennings*, 583 U.S. at 302.  Moreover, Section 1225(b)(2)(A) clearly states that mandatory detention is imposed after "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted . . . ."  In other words, mandatory detention applies *after* the interview and referral, not *before*. Petitioner's interpretation would turn the sequence on its head.

Finally, petitioner argues that imposing mandatory detention for the duration of removal proceedings renders Section 1225(b)(1)(B)(iii)(IV) superfluous.  Dkt. 1 at 14.  But as the federal Respondents argue, all of Section 1225(b)(1) applies only to "arriving" aliens and certain other aliens determined to be inadmissible because of fraud, misrepresentation, or lack of valid

documentation. Dkt. 6 at 5 (citing 8 U.S.C. § 1225(b)(1)). Accordingly, no superfluity arises from applying the mandatory detention provisions of Section 1225(b)(2)(A) to an alien, like Petitioner here, who falls outside the scope of Section 1225(b)(1) but within the plain meaning of an "applicant for admission."

Stepping back to consider the big picture, Petitioner's perspective on the meaning of Section 1225(b)(2)(A) necessarily implies that aliens who evade inspection and detention at a port of entry enjoy the privilege of a bond hearing while those who submit to inspection upon first arrival do not. As the Fifth Circuit explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to "reduce th[at] incongruity." *Buenrostro-Mendez*, 166 F.4th at 499; *see also Avila*, 170 F.4th at 1135–36; *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (explaining IIRIRA "did away with" the "anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully"). Nothing in the text of the statute suggests that the privilege of a bond hearing is based upon the arbitrary standard of avoiding inspection and living in the United States for an unspecified time.

Granting habeas relief on the premise that ICE does not have the statutory right to detain him—despite his non-admitted status—leads to the conclusion that the force of Section 1225(b)(2)(A) arbitrarily dissipates with time. And Petitioner expressly argues this point. Dkt. 1 at 13, 15. That is plainly not what Congress meant when it wrote Section 1225(b)(2)(A) or enacted the bond hearing provision in Section 1226(a). It is also inconsistent with Congress's IIRIRA

13

amendments and encourages the "perverse incentive to enter at an unlawful rather than a lawful location" against which the Supreme Court has warned. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("Like an alien detained after arriving at a port of entry, an alien like respondent is 'on the threshold.' The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." (citations omitted)).

### 2. Past Practice

Petitioner also argues that Respondent's application of Section 1225(b)(2)(A)'s mandatory detention provision not only to recent arrivals but also to unadmitted aliens already in the country like himself is contrary to the government's past practice of "detaining other recent arrivals under § 1226(a) once they pass a credible fear interview and their removal proceedings have commenced." Dkt. 1 at 15–16. But the Court takes seriously its independent duty to interpret the law as written, regardless of an agency's past practice. And "in cases where [a court's] own judgment . . . differ[s] from that of other high functionaries," the Court is "'not at liberty to surrender, or to waive it.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (quoting *United States v. Dickson*, 40 U.S. (15 Pet.) 141, 162 (1841) (Story, J.)); *accord Castañon-Nava*, 2026 WL 1223250, at *39 (Kirsch, J., dissenting) ("the government's past practice did not convey rights to those who benefitted or forever bind future administrations to an incorrect interpretation of the law" (citations omitted)).

14

### 3.    Constitutional Avoidance

Petitioner argues that the Court should apply the constitutional avoidance canon and construe Section 1225(b)(2)(A) "as limited to a reasonably brief period, extendable only if the government shows justification for detention at a bond hearing." Dkt. 1 at 9.  He argues that otherwise Section 1225(b) would raise a serious constitutional problem if it resulted in "unreasonably prolonged detention," and here there is "the foreseeability of continued, lengthy litigation" that may lead to an unreasonably prolonged detention. *Id.* at 11; *see id.* at 10–12.

As Petitioner concedes, the constitutional avoidance canon applies only "when statutory language is susceptible of multiple interpretations," and only then should the court "shun an interpretation that raises serious constitutional doubts and instead . . . adopt an alternative that avoids those problems." *Jennings*, 583 U.S. at 286; *see* Dkt. 1 at 9–10 (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).  This canon is inapplicable in this case.  First, Section 1225(b)(2)(A) is not ambiguous and so is not susceptible to multiple interpretations.  Its plain meaning is clear for the reasons explained above.  And Petitioner does not explain what portion of Section 1225(b)(2)(A) is ambiguous. The constitutional avoidance canon "'has no application' absent 'ambiguity.'" *Nielsen v. Preap*, 586 U.S. 392, 419 (2019) (quoting *Warger v. Shauers*, 574 U.S. 40, 50 (2014)).    Second, Petitioner's detention does not violate the Fifth

15

Amendment, for the reasons explained below. Thus, there are no "serious constitutional doubts" about applying Section 1225(b)(2)(A) in his case.

* * *

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A).

**C.    Petitioner's current detention does not violate due process.**

Petitioner argues his detention without bond pending removal proceedings violates his due process rights under the Fifth Amendment. Dkt. 1 at 7–9. The Due Process Clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). However, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). That holding settles the issue. And this Court reached the same conclusion in a previous action that is materially indistinguishable from this case. *Demir*, 2026 WL 706485, at *7–8.

Petitioner argues that due process requires an "individualized assessment of the need for detention." Dkt. 1 at 7. But the Supreme Court already anticipated this objection and rejected it: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. Applied to Petitioner, this means that Respondents do not have to justify mandatory detention on a case-by-case basis. Respondents may enforce the policy Congress

16

already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Petitioner cites *Zadvydas* to support his argument, dkt. 1 at 7, but that case is distinguishable.  There, the Supreme Court addressed whether a post-removal-period detention statute authorized potentially indefinite detention.  In construing the statute to reject that conclusion, the Supreme Court specifically distinguished the due process issues inherent in the petitioner's indefinite detention from "detention pending a determination of removability," which has an "obvious termination point."  *Zadvydas*, 533 U.S. at 697.  Petitioner's detention here is a detention pending removal proceedings.  Thus, it does not implicate the due process concerns addressed in *Zadvydas*.

Finally, Petitioner argues the Supreme Court's holding in *Demore* presumes detention pending removal proceedings will be brief whereas his detention will be prolonged and indefinite. Dkt. 1 at 7–9 (citing *Demore*, 538 U.S. at 518)).  But as the federal Respondents point out, "any prolonged detention argument is premature," because there has been no prolonged detention in this case. Dkt. 6 at 14.  Even in cases like *Zadvydas*—where the Supreme Court held that the petitioners' removal was "no longer practically attainable," *id.* at 690, thereby eliminating the premise for their detention pending removal—detention for up to six months was presumptively constitutional, *id.* at 701.  And Petitioner expressly agrees that "due process limits mandatory detention under § 1225(b) to a reasonable period of six months." Dkt. 1 at 8 (citing cases).  Petitioner has been detained by ICE pending his removal proceedings for just under two

months.  Accordingly, Petitioner's current detention by ICE does not violate his due process rights.  *See, e.g., Rodriguez*, 814 F. Supp. 3d at 965 (holding that petitioner detained for two months pending removal proceedings was not entitled to habeas relief under Due Process Clause).

### III.  MOTION FOR TEMPORARY RESTRAINING ORDER

Also before the Court is Petitioner's motion for a temporary restraining order.  Dkt. [10].  A temporary restraining order is an "extraordinary and drastic" interlocutory remedy authorized by Federal Rule of Civil Procedure 65(b) in limited circumstances.  *Goodman v. Ill. Dep't of Fin. & Prof'l Regul.*, 430 F.3d 432, 437 (7th Cir. 2005).  The factors considered in determining whether a temporary restraining order should issue are substantially similar to those for a preliminary injunction.  *Accord Chi. Hous. Auth. v. Turner,* No. 1:25-cv-12670, 2025 WL 2972665, at *2 (N.D. Ill. Oct. 20, 2025) (explaining relationship between standards).

To obtain preliminary injunctive relief, a plaintiff "must show that: (1) without this relief, it will suffer 'irreparable harm'; (2) 'traditional legal remedies would be inadequate'; and (3) it has some likelihood of prevailing on the merits of its claims." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)).  "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.* (citing *Courthouse News Serv. v. Brown,* 908 F.3d 1063, 1068)).  A temporary

18

restraining order "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Goodman*, 430 F.3d at 437.

In his motion, Petitioner asks the Court to order that he "be immediately released from custody or, alternatively, that he be provided a bond hearing within seven days before an immigration judge." Dkt. 10 at 12. This relief is identical to the relief Petitioner requests in his habeas petition. For the reasons above, Petitioner does not succeed on the merits of his request for habeas relief. He therefore fails to make the showing required for a temporary restraining order directing the same relief.

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner Jaspreet Singh's Petition for Writ of Habeas Corpus, dkt. [1], **DENIES** his motion for a temporary restraining order, dkt. [10], and **DISMISSES** this case with prejudice. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 5/8/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email